1
2
3
4

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:   (310) 819-3470

5
6

*Counsel for Plaintiff Louisiana Sheriffs'
Pension & Relief Fund*

7

[Additional counsel appear on signature page]

8

9

### UNITED STATES DISTRICT COURT

10

### SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

| | |
|---|---|
| LOUISIANA SHERIFFS' PENSION & RELIEF FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., FRANCIS A. DESOUZA, JOHN THOMPSON, SAM A. SAMAD, and JOYDEEP GOSWAMI,<br><br>Defendants. | Case No. **'23 CV 2328 MMA AHG**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

19
20
21
22
23
24
25
26
27
28

Plaintiff Louisiana Sheriffs' Pension & Relief Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon counsel's investigation, which includes, *inter alia*, review and analysis of: (i) regulatory filings made by Illumina, Inc. ("Illumina" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, presentations, and media reports issued and disseminated by the Company; (iii) analyst reports concerning Illumina; and (iv) other public information regarding the Company.

# I.   INTRODUCTION

1.     Plaintiff brings this securities class action against Illumina and certain of its current and former senior executives (collectively, "Defendants") under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5, promulgated thereunder, on behalf of all investors who purchased or otherwise acquired Illumina common stock between September 21, 2020 and November 9, 2023, inclusive (the "Class Period").

2.     Based in San Diego, California, Illumina develops, manufactures, and markets integrated systems for large scale analysis of genetic variation and biological functions.

3.     In 2015, Illumina created a subsidiary called GRAIL.  GRAIL's goal was to create a non-invasive blood test that could screen asymptomatic patients for several types of cancer.  In 2017, Illumina spun GRAIL off as a standalone, privately held company.

4.     On September 21, 2020—the first day of the Class Period—Illumina announced its plan to re-acquire GRAIL for $8 billion.

5.     Throughout the Class Period, Defendants repeatedly justified the GRAIL acquisition to investors, including by stating the acquisition "will result in

the savings of tens of thousands of lives . . . simply because we can accelerate the business" and that the acquisition was "creating long-term shareholder value." As a result of Defendants' material misrepresentations and omissions, shares of Illumina's common stock traded at artificially inflated prices during the Class Period.

6.     The truth began to emerge on March 30, 2021, when the U.S. Federal Trade Commission (the "FTC") sued in U.S. Federal Court to block Illumina's acquisition of GRAIL. In response, Illumina published a press release stating it "disagrees with, and will oppose, the [FTC]'s challenge to its previously announced acquisition of GRAIL." On this news, the price of Illumina common stock declined nearly 6.6%, from a closing price of $395.00 per share on March 29, 2021, to a closing price of $368.96 on March 30, 2021.

7.     Then, right before the market closed on July 13, 2021, *Reuters* published an article reporting that European Union regulators were demanding concessions from GRAIL as part of its review of the acquisition. This news caused the price of Illumina common stock to decline over 4.6%, from a closing price of $483.52 per share on July 13, 2021, to a closing price of $460.92 per share on July 14, 2021.

8.     After the market closed on August 18, 2021, Illumina announced that it had closed its acquisition of GRAIL. On this news, the price of Illumina common stock declined nearly 7.9%, from a closing price of $510.61 on August 18, 2021, to a closing price of $470.36 on August 19, 2021.

9.     On Sunday, January 16, 2022, the *Financial Times* published an article reporting that Illumina's CEO was "confident Illumina would prevail in the case launched against [European Union regulators] which [the Company] argues has no jurisdiction to investigate the GRAIL deal." In response, the price of Illumina common stock declined more than 5.4%, from a closing price of $405.14 per share

on January 14, 2022, to a closing price of $383.13 on January 18, 2022, the next day the markets were open.

10.     Then, before the market opened on May 1, 2023, Carl Icahn published an open letter to Illumina shareholders, questioning the GRAIL acquisition and requesting that Illumina's Board of Directors "bring in an outside – and demonstrably independent – law firm and forensic accounting team to investigate and address these questions publicly."  Illumina responded just before the market closed on May 1, 2023, by filing a Proxy Statement with the SEC on Schedule 14A, stating "none of Illumina's directors . . . has ever held any equity interests in GRAIL" and "[a]t the time of Illumina's various investment rounds in GRAIL, no individuals at Illumina were investors in GRAIL. . . . and did not otherwise receive any GRAIL equity."  On this news, the price of Illumina common stock declined more than 5%, from a closing price of $205.56 on April 28, 2023, to a closing price of $195.16 on May 2, 2023.

11.     On May 25, 2023, Illumina held its shareholder vote, culminating with Carl Icahn winning one seat on the Company's Board.  This caused the price of Illumina common stock to decline by nearly 9%, from a closing price of $212.65 per share on May 24, 2023, to a closing price of $193.53 per share on May 25, 2023.

12.     Then, after the market closed on June 26, 2023, Illumina filed a Current Report with the SEC on Form 8-K.  In that report, Illumina announced a "multiyear plan to realign its operating expenses" and plans to reduce its annualized run rate by at least $100 million.  On this news, the price of Illumina common stock declined 4.4%, from a closing price of $191.88 on June 26, 2023, to a closing price of $183.43 on June 27, 2023.

13.     On August 10, 2023, after the market closed, Illumina disclosed that it was the target of an SEC investigation.  In response, the price of Illumina common

stock declined more than 2.5%, from a closing price of $185.12 on August 10, 2023, to a closing price of $180.48 on August 11, 2023.

14.     Then, after the market closed on October 17, 2023, Carl Icahn filed a derivative and class action lawsuit in Delaware Court of Chancery against current and former members of Illumina's board of directors.  In response, the price of Illumina common stock declined more than 5.6%, from a closing price of $131.87 on October 17, 2023, to a closing price of $124.45 on October 18, 2023.

15.     Finally, after the market closed on November 9, 2023, Illumina announced it would be taking an $821 million write down related to GRAIL.  On this news, the price of Illumina common stock declined more than 8%, from a closing price of $106.98 on November 9, 2023, to a closing price of $98.37 on November 10, 2023.

16.     As a result of Defendants' wrongful acts and omissions, which caused the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant damages.

## II.   JURISDICTION AND VENUE

17.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

19.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  Illumina maintains its corporate headquarters in San Diego, California, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including the preparation and

dissemination to the public of materially false and misleading information, occurred in this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.  PARTIES

20.    Plaintiff Louisiana Sheriffs' Pension & Relief Fund is a multi-employer, defined benefit pension plan providing retirement, disability, and survivor benefits to employees of sheriff's offices throughout the State of Louisiana.  Plaintiff manages assets of approximately $4.5 billion on behalf of its approximately 20,400 active and retired participants.  As indicated on the attached certification, Plaintiff purchased shares of Illumina common stock at artificially inflated prices during the Class Period, and suffered damages as a result of the violations of the federal securities laws alleged herein.

21.    Defendant Illumina develops, manufactures, and markets integrated systems for large scale analysis of genetic variation and biological functions. Illumina is incorporated in Delaware and maintains its principal executive offices at 5200 Illumina Way, San Diego, California.  Illumina's common stock trades on the NASDAQ, which is an efficient market, under ticker symbol "ILMN."  As of November 6, 2023, Illumina had over 158 million shares of common stock outstanding, owned by hundreds or thousands of investors.

22.    Defendant Francis A. deSouza ("deSouza") was the Company's Chief Executive Officer ("CEO") from 2016 until June 11, 2023.

23.    Defendant John Thompson ("Thompson") was a member of Illumina's Board of Directors beginning on May 3, 2017, and served as the Chairman of the Company's Board of Directors from May 2021 to May 25, 2023, when he was voted off the Board at the 2023 annual stockholder meeting.

24.     Defendant Sam A. Samad ("Samad") was Illumina's Chief Financial Officer ("CFO") and Senior Vice President from January 2017 to July 8, 2022.

25.     Defendant Joydeep Goswami ("Goswami") has been Illumina's CFO since July 8, 2022, as well as Illumina's Chief Strategy and Corporate Development Officer since September 2019.

26.     Defendants deSouza, Thompson, Samad, and Goswami are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with Illumina, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## IV.   <u>BACKGROUND</u>

27.     Illumina develops, manufactures, and markets integrated systems for large scale analysis of genetic variation and biological functions.  In 2015, Illumina formed a subsidiary company: GRAIL.  GRAIL's goal was to decrease global cancer mortality by detecting cancer at a curable, asymptomatic stage through a non-invasive blood test that could screen for several types of cancer at once.  In 2017, Illumina spun-off GRAIL into a privately held company.

## V.   DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

28.   The Class Period begins on September 21, 2020, when Illumina published a press release, which was also filed with the SEC on Form 8-K, announcing its re-acquisition of GRAIL.  In that announcement, Illumina stated the acquisition would "launch [a] new era of cancer detection" and that Illumina planned to use its "global scale, manufacturing and clinical capabilities" to support and accelerate GRAIL's commercialization efforts.

29.   On October 29, 2020, Illumina held a conference call with analysts and investors to discuss the Company's earnings and operations for the third quarter of 2020.  On that call, Defendant deSouza stated, "[w]e believe our planned acquisition of GRAIL will accelerate a new era of cancer detection, transforming cancer survivability and opening up the largest clinical application of genomics we've seen."

30.   On that same call, in response to an analyst's question about "the approach that Illumina took to GRAIL's acquisition in light of another multi-cancer liquid biopsy acquisition this week. . . . it appears that GRAIL is valued significantly higher versus Thrive.  So could you elaborate if there is anything . . . that gives you a greater confidence and a higher valuation?"  Defendant Samad responded, "What attracted us to GRAIL was its unique position in the market in terms of being the closest to having a commercial test and in terms of having the performance characteristics consistent with being closest to having a commercial test."

31.   The statements referenced in ¶¶ 28-30 were materially false and misleading and failed to disclose Defendants' undisclosed interest in GRAIL.  Specifically, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading and/or caused the Company to make materially false and misleading statements to the investing public

that failed to disclose that: (i) certain Illumina insiders had personal financial motives for acquiring GRAIL; and (ii) acquiring GRAIL was not in the Company's best interests.  As a result, Defendants' positive statements about the GRAIL acquisition were materially false and/or misleading and/or lacked a reasonable basis.

32.     On March 30, 2021, the FTC sued to block Illumina's acquisition of GRAIL.  In response, Illumina issued a press release, which was also filed with the SEC on Form 425.  In that press release, Illumina stated that it "disagrees with, and will oppose, the [FTC]'s challenge to its previously announced acquisition of GRAIL."

33.     On this news, the price of Illumina common stock declined more than 6.5%, from a closing price of $395.00 per share on March 29, 2021, to a closing price of $368.96 on March 30, 2021.

34.     However, despite these disclosures, Defendants continued to misrepresent the reasons for the GRAIL acquisition.  In the March 30, 2021 press release, Illumina stated, "In reuniting the two organizations [Illumina and GRAIL], Illumina will leverage its global scale of manufacturing and clinical capabilities, as well as its global regulatory and reimbursement expertise, to bring early-stage, multi-cancer testing to patients more quickly and more affordably, resulting in more lives being saved."

35.     On April 20, 2021, Illumina issued a press release in which Defendant deSouza stated, "Reuniting GRAIL and Illumina will allow us to bring GRAIL's breakthrough early detection multi-cancer test to patients across the world faster and consequently save lives."

36.     On April 27, 2021, Illumina held a conference call with analysts and investors to discuss the Company's earnings and operations for the first quarter of 2021.  On that call, Defendant deSouza stated, "One of the many reasons we decided to acquire GRAIL was to accelerate patient access to breakthrough, multi-cancer

early detection blood tests, which could save tens of thousands of lives."  He also stated, "We are committed to pursuing the acquisition of GRAIL. . . . We continue to feel that the facts are on our side; the law is on our side.  And we continue to expect that the deal will close."

37.    On May 13, 2021, Defendant Samad represented Illumina at the Bank of America Healthcare Conference.  At that conference, in response to a question by an analyst regarding why Illumina decided to go after GRAIL, Defendant Samad responded, "So why GRAIL? I mean it's the single most compelling, I would say, application that's going to be coming up in human health" and "we believe the profile of [GRAIL's cancer screening test] is beyond – well-above and well-beyond any other product that's to be introduced in that space."  Defendant Samad also explained "we think GRAIL is definitely going to be a market accelerator and a really important product."

38.    The statements referenced in ¶¶ 34-37 were materially false and misleading and failed to disclose Defendants' undisclosed interest in GRAIL. Specifically, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading and/or caused the Company to make materially false and misleading statements to the investing public that failed to disclose that: (i) certain Illumina insiders had personal financial motives for acquiring GRAIL; and (ii) acquiring GRAIL was not in the Company's best interests.  As a result, Defendants' positive statements about the GRAIL acquisition were materially false and/or misleading and/or lacked a reasonable basis.

39.    Right before the market closed on July 13, 2021, *Reuters* reported that European Union regulators were demanding concessions from GRAIL as part of their review of Illumina's acquisition of GRAIL.

40.     On this news, the price of Illumina common stock declined more than 4.6%, from a closing price of $483.52 per share on July 13, 2021, to a closing price of $460.92 on July 14, 2021.

41.     However, despite these disclosures, Defendants continued to misrepresent the reasons for the GRAIL acquisition.  On August 5, 2021, Illumina held a conference call with analysts and investors to discuss the Company's earnings and operations for the second quarter of 2021.  On that call, in response to an analyst question about why Illumina remains committed to GRAIL, Defendant deSouza stated, "We continue to believe that this deal will result in the savings of tens of thousands of lives that would not be saved if we didn't buy GRAIL, simply because we can accelerate the business.  So to answer the question, we are committed to working through this deal."

42.     The statements referenced in ¶ 41 were materially false and misleading and failed to disclose Defendants' undisclosed interest in GRAIL.  Specifically, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading and/or caused the Company to make materially false and misleading statements to the investing public that failed to disclose that: (i) certain Illumina insiders had personal financial motives for acquiring GRAIL; and (ii) acquiring GRAIL was not in the Company's best interests.  As a result, Defendants' positive statements about the GRAIL acquisition were materially false and/or misleading and/or lacked a reasonable basis.

43.     On August 18, 2021, after the market closed, Illumina issued a press release, which was also filed with the SEC on Form 8-K, announcing that Illumina had closed its acquisition of GRAIL.

44.     On this news, the price of Illumina common stock declined nearly 7.9%, from a closing price of $510.61 per share on August 18, 2021 to a closing price of $470.36 on August 19, 2021.

45.    However, despite these disclosures, Defendants continued to misrepresent the reasons for the GRAIL acquisition.  In the August 18, 2021 press release, Illumina stated that its "acquisition of GRAIL will accelerate access and adoption of this life-saving test worldwide" and that "[t]he deal will save lives."

46.    On September 13, 2021, Defendant deSouza represented Illumina at the Morgan Stanley Global Healthcare Conference – Fireside Chat.  At that conference, in response to a question regarding the key considerations when it came to Illumina's acquisition of GRAIL, Defendant deSouza stated:

> In addition to the considerations around shareholder value and making sure we're doing the move that long term maximizes shareholder value, we also felt a moral obligation to close the deal because the potentially life savings, the savings life associated with doing this deal are so substantial. By accelerating GRAIL in terms of its global distribution and the accessibility of the tests globally, we will save many thousands of lives by getting this test into the hands of more people and making it more affordable than GRAIL would do on their own. And so, there was a moral element here, too, by saying in addition to creating long-term shareholder value, we have an obligation to have this deal reviewed and get to a decision because of the life-saving potential of doing this deal. And so all those considerations came together and that's how we made the decision.

47.    On November 4, 2021, Illumina held a conference call with analysts and investors to discuss the Company's earnings and operations for the third quarter of 2021.  On that call, Defendant deSouza stated, "[W]hat we want to do is, make sure that GRAIL continues to create value because . . . in the event that [] we have GRAIL and can grow it, that's huge, huge success obviously and hugely valuable for our shareholders.  But we know that if we create a lot of value in GRAIL, then no matter what the regulatory outcome is, it's still a big win not only for the people who are getting screened but also for our shareholders because we'll have an asset that's significantly appreciated."

48. The statements referenced in ¶¶ 45-47 were materially false and misleading and failed to disclose Defendants' undisclosed interest in GRAIL. Specifically, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading and/or caused the Company to make materially false and misleading statements to the investing public that failed to disclose that: (i) certain Illumina insiders had personal financial motives for acquiring GRAIL; and (ii) acquiring GRAIL was not in the Company's best interests. As a result, Defendants' positive statements about the GRAIL acquisition were materially false and/or misleading and/or lacked a reasonable basis.

49. On Sunday, January 16, 2022, the *Financial Times* reported that Defendant deSouza was "confident Illumina would prevail in the case launched against [European Union regulators] which [the Company] argues had no jurisdiction to investigate the GRAIL deal."

50. On this news, the price of Illumina common stock declined nearly 5.5%, from a closing price of $405.14 per share on January 14, 2022, to a closing price of $383.13 on January 18, 2022, the next day the markets were open.

51. Despite these disclosures, Defendants continued to misrepresent the reasons for the GRAIL acquisition. On May 12, 2022, Defendant Samad represented Illumina at the Bank of America Healthcare Conference. At that conference, Defendant Samad stated that the GRAIL test "itself and other revenue from GRAIL could potentially be even larger than our core business. . . . that's how transformational this product is."

52. On October 3, 2022, Illumina held its annual "Investor Day" meeting with analysts and investors. At that meeting, Defendant deSouza stated, "[W]e believe Illumina's acquisition of GRAIL can have lifesaving benefits for people who have cancer and don't know about it. And we also believe it creates long-term shareholder value for Illumina's shareholders, which is why we did the deal."

53.     On November 30, 2022, Defendant deSouza represented Illumina at the Piper Sandler Healthcare Conference.   At that conference, Defendant deSouza stated, "We knew what it took to bring on a platform like GRAIL that, for us, provided long-term value, long-term growth opportunities that very few other assets would have provided."

54.     On March 24, 2023, Illumina issued a press release, which was also filed with the SEC on Form DEFA14A.  In that press release, Illumina stated, "The Board takes its fiduciary duties seriously and exercises considered and deliberate judgement [sic] with independent advice.  Illumina steadfastly follows appropriate risk management and disclosure practices.   Illumina's disclosures are full, transparent and timely, consistent with SEC and other disclosure requirements."

55.     The statements referenced in ¶¶ 51-54 were materially false and misleading and failed to disclose Defendants' undisclosed interest in GRAIL. Specifically, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading and/or caused the Company to make materially false and misleading statements to the investing public that failed to disclose that: (i) certain Illumina insiders had personal financial motives for acquiring GRAIL; and (ii) acquiring GRAIL was not in the Company's best interests.   As a result, Defendants' positive statements about the GRAIL acquisition were materially false and/or misleading and/or lacked a reasonable basis.

56.     On May 1, 2023, Carl Icahn published an open letter to Illumina shareholders, questioning the GRAIL acquisition and requesting that the Board "bring in an outside – and demonstrably independent – law firm and forensic accounting team to investigate and address these questions publicly."

57.     In response, just before the market closed on May 1, 2023, Illumina issued a press release, which was also filed with the SEC on Form DEFA14A, stating:

> None of Illumina's directors involved in either the decision to sign or the decision to close the GRAIL acquisition – including our former CEO and Executive Chairman Jay Flatley, our current CEO Francis deSouza and each of Illumina's current directors – has ever held any equity interest in GRAIL. At the time of Illumina's various investment rounds in GRAIL, no individuals at Illumina were investors in GRAIL. Illumina's employees, executive officers and Board members were not permitted to participate in GRAIL investment rounds and did not otherwise receive any GRAIL equity. Illumina, Inc. was the founder of GRAIL and individuals employed by Illumina moved to GRAIL as part of the spin-out in 2016. Those who moved to GRAIL terminated their relationship with Illumina at the time of transition and directors and employees who remained at Illumina could not receive any GRAIL equity.

58. On this news, the price of Illumina common stock declined nearly 5.1%, from a closing price of $205.56 per share on April 28, 2023, to a closing price of $195.16 on May 2, 2023.

59. On May 25, 2023, Carl Icahn secured a seat on the Company's Board as a result of his proxy contest.

60. On this news, the price of Illumina common stock declined nearly 9%, from a closing price of $212.65 per share on May 24, 2023, to a closing price of $193.53 on May 25, 2023.

61. Then, on June 26, 2023, Illumina's announced a "multiyear plan to realign its operating expenses" and plans to reduce its annualized run rate by at least $100 million.

62. On this news, the price of Illumina common stock declined 4.4%, from a closing price of $191.88 per share on June 26, 2023, to a closing price of $183.43 on June 27, 2023.

63. Then, after the market closed on August 10, 2023 Illumina filed its quarterly report with the SEC on Form 10-Q for the second quarter of 2023. In that quarterly report, Illumina stated "In July 2023, we were informed that the staff of the SEC was conducting an investigation relating to Illumina and was requesting

documents and communications primarily related to Illumina's acquisition of GRAIL and certain statements and disclosures concerning GRAIL, its products and its acquisition, and related to the conduct and compensation of certain members of Illumina and GRAIL management, among other things."

64. On this news, the price of Illumina common stock declined over 2.5%, from a closing price of $185.12 per share on August 10, 2023, to a closing price of $180.48 on August 11, 2023.

65. However, despite these disclosures, Defendants continued to misrepresent the reasons for the GRAIL acquisition. On September 11, 2023, Defendant Goswami represented Illumina at the Morgan Stanley Global Healthcare Conference. At that conference, Defendant Goswami stated "GRAIL was a very different kind of bet, right. There was a slightly different set of customers, the timeframe in which that bet would play out. We knew from the beginning that it was a long-term bet, but it was such a huge bet that it over – if it played out, right, it created a market which would rival the size of our business in the outer years."

66. The statements referenced in ¶¶ 57 and 65 were materially false and misleading and failed to disclose Defendants' undisclosed interest in GRAIL. Specifically, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading and/or caused the Company to make materially false and misleading statements to the investing public that failed to disclose that: (i) certain Illumina insiders had personal financial motives for acquiring GRAIL; and (ii) acquiring GRAIL was not in the Company's best interests. As a result, Defendants' positive statements about the GRAIL acquisition were materially false and/or misleading and/or lacked a reasonable basis.

67. On October 17, 2023, Carl Icahn filed a derivative and class action lawsuit in Delaware Court of Chancery against current and former members of Illumina's board of directors.

68.     On this news, the price of Illumina common stock declined over 5.6%, from a closing price of $131.87 per share on October 17, 2023, to a closing price of $124.45 on October 18, 2023.

69.     Finally, after the market closed on November 9, 2023, Illumina filed its quarterly report with the SEC on Form 10-Q for the third quarter of 2023.  In that quarterly report, Illumina stated it had taken a "goodwill and intangible impairments of $821 million related to the GRAIL segment."

70.     On this news, the price of Illumina common stock declined over 8%, from a closing price of $106.98 per share on November 9, 2023, to a closing price of $98.37 on November 10, 2023.

## VI.   LOSS CAUSATION

71.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This conduct artificially inflated the price of Illumina's common stock and operated as a fraud or deceit on the Class (as defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Illumina's common stock fell precipitously as the prior artificial inflation came out of the price over time.  As a result of their purchases of Illumina common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws, which were caused by Defendants' material misrepresentations and omissions.

## VII.  CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the publicly traded common stock of Illumina during the Class

Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Illumina and their families and affiliates.

73.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of November 6, 2023, Illumina had over 158 million shares of common stock outstanding, owned by hundreds or thousands of investors.

74.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Illumina common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damage sustained by Class members and the appropriate measure of damages.

75.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

76.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Joinder of all Class members is impracticable.

## VIII.   INAPPLICABILITY OF STATUTORY SAFE HARBOR

78.     Illumina's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

79.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Illumina who knew that the statement was false.   None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## IX.   PRESUMPTION OF RELIANCE

80.     At all relevant times, the market for Illumina's common stock was an efficient market for the following reasons, among others:

(a)   Illumina common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)   As a regulated issuer, Illumina filed periodic public reports with the SEC and the NASDAQ;

(c)   Illumina regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)   Illumina was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

81.   As a result of the foregoing, the market for Illumina common stock promptly digested current information regarding Illumina from all publicly available sources and reflected such information in the price of Illumina common stock. Under these circumstances, all purchasers of Illumina common stock during the Class Period suffered similar injury through their purchase of Illumina common stock at artificially inflated prices and the presumption of reliance applies.

82.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the true reason for the Company's multi-billion-dollar acquisition of GRAIL, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making

investment decisions.  Given the cost of the GRAIL acquisition, that requirement is satisfied here.

## X.    CLAIMS FOR RELIEF

### COUNT I

**For Violations of Section 10(b) of the Exchange Act**

**and SEC Rule 10b-5 Promulgated Thereunder**

**(Against All Defendants)**

83.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

84.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Illumina common stock at artificially inflated prices.

85.    Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Illumina common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

86.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information and misrepresented the truth about the prospects of the Company's lead asset.

87.    During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

88.    Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.  Defendants engaged in this misconduct to conceal Illumina's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

89.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Illumina's common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Illumina's common stock had been artificially inflated by Defendants' fraudulent course of conduct.

90.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

91.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

92.    Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

93.     The Individual Defendants acted as controlling persons of Illumina within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Illumina, the Individual Defendants had the power and ability to control the actions of Illumina and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## XI.   PRAYER FOR RELIEF

94.     WHEREFORE, Plaintiff prays for judgment as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(d)     Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XII.   JURY DEMAND

95.     Plaintiff demands a trial by jury.

Dated: December 21, 2023

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:   (310) 819-3470

-and-

HANNAH ROSS
(hannah@blbglaw.com)
AVI JOSEFSON
(avi@blbglaw.com)
SCOTT R. FOGLIETTA
(scott.foglietta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:   (212) 554-1400
Fax:   (212) 554-1444

*Counsel for Plaintiff Louisiana Sheriffs'
Pension & Relief Fund*

**KLAUSNER KAUFMAN JENSEN
  & LEVINSON**

ROBERT D. KLAUSNER
(bob@robertdklausner.com)
STUART A. KAUFMAN
(stu@robertdklausner.com)
7080 Northwest 4th Street
Plantation, FL 33317
Tel:   (954) 916-1202
Fax:   (954) 916-1232

*Additional Counsel for Plaintiff Louisiana
Sheriffs' Pension & Relief Fund*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Osey "Skip" McGee Jr., on behalf of Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Executive Director of Louisiana Sheriffs. I have reviewed the complaint with Louisiana Sheriffs' legal counsel, and based on the legal counsel's knowledge and advice, authorize its filing.

2. Louisiana Sheriffs did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Louisiana Sheriffs is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Louisiana Sheriffs' transactions in the Illumina, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Louisiana Sheriffs has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *In re Vertiv Holdings Co. Securities Litigation*, No. 22-cv-3572 (S.D.N.Y.)
    *UA Local 13 Pension Fund v. Bumble Inc.*, No. 22-cv-624 (S.D.N.Y.)

6. Louisiana Sheriffs has sought to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff or was not appointed lead plaintiff:

    *San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*,
    No. 22-cv-6339 (S.D.N.Y.)

7. Louisiana Sheriffs will not accept any payment for serving as a representative party on behalf of the Class beyond Louisiana Sheriffs' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

Louisiana Sheriffs has relied on the research and analysis of the complaint provided by legal counsel Bernstein Litowitz Berger & Grossmann LLP. The undersigned declares that the statements made and information provided are, to the best of his knowledge, true and correct.

Executed this **21**ˢᵗ day of December, 2023.

_____
Osey "Skip" McGee Jr.
Executive Director
*Louisiana Sheriffs' Pension & Relief Fund*

**Louisiana Sheriffs' Pension & Relief Fund**
**Transactions in Illumina, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 9/30/2020 | 314 | 307.9018 |
| Purchase | 10/1/2020 | 366 | 309.8052 |
| Purchase | 10/1/2020 | 1,496 | 310.0852 |
| Purchase | 10/1/2020 | 882 | 309.1579 |
| Purchase | 10/1/2020 | 1,398 | 310.7500 |
| Purchase | 10/2/2020 | 1,225 | 307.9165 |
| Purchase | 10/2/2020 | 875 | 306.8200 |
| Purchase | 10/5/2020 | 858 | 317.6941 |
| Purchase | 10/5/2020 | 580 | 317.0216 |
| Purchase | 10/5/2020 | 215 | 316.2650 |
| Purchase | 10/6/2020 | 1,097 | 319.4932 |
| Purchase | 10/6/2020 | 359 | 318.9435 |
| Purchase | 7/21/2021 | 50 | 477.7748 |
| Purchase | 7/22/2021 | 20 | 485.4650 |
| Purchase | 7/23/2021 | 60 | 492.9780 |
| Purchase | 8/19/2021 | 20 | 470.3600 |
| Purchase | 8/24/2021 | 60 | 476.9055 |
| Purchase | 9/16/2021 | 70 | 449.3049 |
| Purchase | 9/21/2021 | 30 | 434.7600 |
| Purchase | 9/22/2021 | 50 | 433.9906 |
| Purchase | 9/24/2021 | 30 | 433.0850 |
| Purchase | 9/27/2021 | 50 | 425.0632 |
| Purchase | 2/15/2022 | 80 | 338.9503 |
| Purchase | 2/22/2022 | 90 | 319.7014 |
| Purchase | 2/23/2022 | 40 | 315.2800 |
| Purchase | 3/1/2022 | 20 | 330.9675 |
| Purchase | 7/11/2022 | 100 | 190.3200 |
| Purchase | 9/27/2022 | 2,971 | 187.1686 |
| Purchase | 9/28/2022 | 1,997 | 198.6020 |
| Purchase | 9/29/2022 | 225 | 195.2050 |
| Purchase | 9/29/2022 | 471 | 195.0016 |
| Purchase | 9/29/2022 | 3,338 | 196.1874 |
| Purchase | 10/19/2022 | 5 | 204.3800 |
| Purchase | 10/19/2022 | 63 | 203.1878 |
| Purchase | 10/19/2022 | 147 | 203.6548 |
| Purchase | 10/19/2022 | 20 | 204.4550 |
| Purchase | 10/20/2022 | 171 | 208.2592 |
| Purchase | 10/20/2022 | 90 | 209.5231 |
| Purchase | 10/21/2022 | 72 | 214.2474 |

**Louisiana Sheriffs' Pension & Relief Fund
Transactions in Illumina, Inc.**

| <u>Transaction</u> | <u>Date</u> | <u>Shares</u> | <u>Price</u> |
|---|---|---|---|
| Purchase | 10/21/2022 | 17 | 215.6971 |
| Purchase | 10/24/2022 | 76 | 218.8105 |
| Purchase | 10/24/2022 | 6 | 218.8350 |
| Purchase | 10/24/2022 | 157 | 220.5700 |
| Purchase | 10/24/2022 | 9 | 219.1900 |
| Purchase | 11/30/2022 | 6 | 204.4500 |
| Purchase | 11/30/2022 | 23 | 204.4752 |
| Purchase | 12/6/2022 | 2 | 204.9350 |
| Purchase | 12/12/2022 | 9 | 203.8878 |
| Purchase | 12/12/2022 | 5 | 204.0760 |
| Purchase | 12/15/2022 | 30 | 204.5780 |
| Purchase | 12/16/2022 | 120 | 200.3574 |
| Purchase | 12/19/2022 | 5 | 197.7000 |
| Purchase | 12/29/2022 | 268 | 204.0659 |
| Purchase | 2/9/2023 | 1,584 | 196.3182 |
| Purchase | 3/13/2023 | 657 | 226.8806 |
| Purchase | 7/5/2023 | 66 | 185.8236 |
| | | | |
| Sale | 2/5/2021 | (300) | 428.1400 |
| Sale | 10/28/2021 | (480) | 412.6482 |
| Sale | 12/15/2021 | (30) | 384.1387 |
| Sale | 1/5/2022 | (80) | 373.2518 |
| Sale | 1/6/2022 | (70) | 378.9300 |
| Sale | 1/7/2022 | (80) | 373.5804 |
| Sale | 1/10/2022 | (70) | 358.7607 |
| Sale | 1/11/2022 | (110) | 410.9358 |
| Sale | 4/4/2022 | (70) | 366.9611 |
| Sale | 4/5/2022 | (40) | 364.7913 |
| Sale | 4/6/2022 | (120) | 358.5200 |
| Sale | 7/12/2022 | (100) | 187.9900 |
| Sale | 1/10/2023 | (241) | 195.8058 |
| Sale | 1/10/2023 | (86) | 195.9050 |
| Sale | 1/11/2023 | (386) | 199.6757 |
| Sale | 1/11/2023 | (339) | 203.8420 |
| Sale | 1/12/2023 | (128) | 194.8078 |
| Sale | 1/12/2023 | (82) | 193.9870 |
| Sale | 1/12/2023 | (39) | 196.9208 |
| Sale | 5/26/2023 | (700) | 195.5815 |
| Sale | 7/19/2023 | (366) | 183.5377 |

**Louisiana Sheriffs' Pension & Relief Fund**
**Transactions in Illumina, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 11/7/2023 | (700) | 114.5337 |